This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DANIEL J. HERBISON,**

Plaintiff/Counterdefendant-Appellant,

v.                                                  **No. A-1-CA-34997**

**MARIE SCHWANER, Personal Representative of the ESTATE of ROBERT MONTGOMERY,**

Defendant/Counterclaimant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Daniel J. Herbison
Albuquerque, NM

Pro Se Appellant

Ryan P. Danoff
Albuquerque, NM

for Appellee.

## MEMORANDUM OPINION

**ZAMORA, Chief Judge.**

{1} Daniel J. Herbison (Plaintiff) appeals two district court orders, the first enforcing a settlement memorandum and the second awarding Marie Schwaner, personal representative of the Estate of Robert Montgomery (Defendant), attorney fees. On appeal, Plaintiff argues that the settlement memorandum signed by both parties amounted to a preliminary agreement to settle and not an enforceable agreement. Plaintiff also argues that the district court abused its discretion in awarding Defendant attorney fees, pursuant to Rule 1-011 NMRA, without first holding an evidentiary hearing. Last, Plaintiff asserts that the district court erred in allowing Defendant to file a Rule 1-056(F) NMRA affidavit in response to his motion for summary judgment.

{2} We conclude that the parties reached a final and enforceable agreement and therefore affirm the district court's order enforcing their settlement memorandum. We also conclude that the district court did not abuse its discretion when it granted Defendant's motion for attorney fees. Accordingly, we affirm both district court orders.

**BACKGROUND**

{3} Immediately following court-ordered mediation, the parties signed a hand-written settlement memorandum prepared by the mediator agreeing to specific

terms and conditions.[1] The mediator sent a follow-up letter to the parties instructing Defendant's counsel to prepare the draft of the settlement agreement, the final release, and the order of dismissal. In the letter, he also reminded the parties that the memorandum of settlement provided that they could refer any language disputes to him for resolution, though he did not anticipate any, given the simple terms of the agreement. The parties then began a prolonged exchange of emails in an attempt to facilitate the preparation of the formal settlement agreement, but these efforts failed as the result of a disagreement between the parties over the form of release and a remedy for a breach of the confidentiality provision. Both parties agreed that a breach of confidentiality would be considered a material breach of the agreement, but Plaintiff suggested that the remedy for any breach "shall entitle the non-breaching party, at such party's election, to cancel this agreement and to recover all consideration given or paid by the nonbreaching party." Defendant, for her part, favored language providing that "the breaching party could be subject to damages for such disclosure to be determined by a court of law." The parties could not resolve their differences over the disputed language, a circumstance which prevented performance of their respective obligations under the settlement memorandum. After receiving correspondence from both parties' attorneys, the mediator offered to assist in fashioning appropriate language for

---

[1] In deference to the confidentiality provision of the settlement memorandum, we discuss only those provisions necessary to our analysis.

purposes of resolving the remaining breach of confidentiality remedy issue. The mediator proposed the following language in an attempt to resolve the impasse:

> All matters discussed at the settlement facilitation conference and terms of the settlement are strictly confidential. Any disclosure of any such matter or of any term of this settlement by any party, including a party's agent at the direction of the party, is a substantial and material breach by the party of this Settlement Agreement and Mutual Release. In such event, the nonbreaching party may apply to any court with jurisdiction for any and all available remedies, including damages and/or rescission of the Settlement Agreement and Mutual Release.

The mediator also expressed his view that the parties created an enforceable contract when they executed the settlement memorandum at the mediation.

{4}   Defendant eventually filed a motion to enforce settlement asserting that the settlement memorandum was an enforceable settlement agreement. In her motion, Defendant alleged that "[t]he remaining issue between the parties is the form of the release centering mainly around the confidentiality clause in the form of release[,]" and that this amounted to a dispute over language and should have been resolved by the mediator as specified in the court's order sending the parties to mediation. In response, Plaintiff asserted that the settlement memorandum was an incomplete settlement agreement, and as such was unenforceable.

{5}   Following a hearing, the district court granted Defendant's motion to enforce, finding that: both parties had signed the settlement memorandum; the parties had agreed that language disputes would be referred to the mediator; "[t]he parties' disagreement on the formal settlement agreement and release of claims

4

[was] a 'language dispute;' " and ultimately "[t]he parties[' s]ettlement [m]emorandum is binding and shall be enforced." Based upon these findings, the district court ordered both parties to sign the formal settlement agreement as modified by the district court within thirty days and to comply with all provisions of the settlement agreement.

{6}     Defendant also filed a motion for attorney fees and costs. Although Defendant's motion did not provide a legal basis for an award of attorney fees, her reply brief cited Rule 1-011 as a legal basis for the award, asserting that Plaintiff's noncompliance with the settlement memorandum constituted frivolous or vexatious litigation. This appeal followed.

**DISCUSSION**

**The Settlement Memorandum is an Enforceable Contract**

{7}     "All settlement agreements are contracts and therefore are subject to contract law[.]" *Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675; *see Sitterly v. Matthews*, 2000-NMCA-037, ¶ 15, 129 N.M. 134, 2 P.3d 871 (recognizing that a settlement agreement is interpreted in the same way as any other contract). Thus, the issue before this Court is a question of law—whether the settlement memorandum amounted to the formation of a complete, binding, and enforceable contract. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 22, 99 N.M. 802, 664 P.2d 1000 ("The existence of a contract

between parties is generally a question of law[.]"), *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354, 838 P.2d 971. We review questions of law de novo. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 ("Contract interpretation is a matter of law[.]").

{8}   The parties do not dispute the fact that they signed the settlement memorandum at the conclusion of their mediation, or the substance of the terms of that settlement memorandum. For a contract to be valid there must be a meeting of the minds between the parties or an objective manifestation of the parties' mutual agreement. *See Trujillo v. Glen Falls Ins. Co.*, 1975-NMSC-046, ¶ 6, 88 N.M. 279, 540 P.2d 209 (holding that in order for a contract to be valid, the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon). When one party makes an offer, acceptance of the offer by the other party must be unconditional. *See Silva v. Noble*, 1973-NMSC-106, ¶ 6, 85 N.M. 677, 515 P.2d 1281 (noting that "[i]n order to constitute a binding contract, there must be an unconditional acceptance of the offer made[,] . . . and an intention to be bound" by the agreement (internal quotation marks and citation omitted)). Manifestation of an agreement "may be either written or oral or by actions and conduct or a combination thereof, but regardless of the form or means used, there must be made manifest a definite intention to accept the offer and every part

thereof and be presently bound thereby without material reservations or conditions." *Id.* (internal quotation marks and citation omitted). "An offeree's acceptance must be clear, positive, and unambiguous[.]" *Orcutt v. S & L Paint Contractors, Ltd.*, 1990-NMCA-036, ¶ 12, 109 N.M. 796, 791 P.2d 71.

{9}     We recognize, however, that in the context of settlement agreements where negotiations are ongoing and continuous, it can be more difficult to identify with precision the offer, the acceptance and the manifestation of mutual assent. *See* Restatement (Second) of Contracts, § 22(2) (1981) ("A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined."). Our appellate courts have held that a party "can be considered bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal or cause a change in the terms or purpose to be accomplished by the settlement." *Jones v. United Minerals Corp.*, 1979-NMSC-103, ¶ 13, 93 N.M. 706, 604 P.2d 1240 (citing *Bogle v. Potter*, 1963-NMSC-076, ¶ 3 72 N.M. 99, 380 P.2d 839). Thus, acceptance requires agreement between the parties on terms that are essential to the agreement. Otherwise, the contract is unenforceable. *See Fratello v. Socorro Elec. Co-op, Inc.*, 1988-NMSC-058, ¶ 9, 107 N.M. 378, 758 P.2d 792 (holding that there was no settlement agreement when it was not clear the parties agreed on a specific price and date for the delivery of the trucks that were the subject of the

7

contract); *Silva*, 1973-NMSC-106, ¶ 6 (holding that there was no contract where testimony showed the parties could not agree on the size of the car wash that was the subject of the agreement, or the details concerning the method of financing).

{10}   Here, Plaintiff has taken issue with mere details concerning but one of the terms of the settlement memorandum—its confidentiality provision—and not the essence of the term itself. The parties agreed and have continued to agree on the material terms of the agreement. None of the communications exchanged between the parties subsequent to the signing of the settlement memorandum called into question the parties' mutual assent to the inclusion of a confidentiality provision or any other material term of the settlement agreement.

{11}   The material term at issue here was the fact that the agreement was to remain confidential. As we previously noted, our New Mexico Supreme Court has held that an enforceable contract exists where the remaining details are not essential to the enforcement of the contract in factually similar situations. *See Bogle v. Potter*, 1963-NMSC-076, ¶ 11, 72 N.M. 99, 380 P.2d 839 (holding that a party's failure to include in its offer the details of carrying out an agreement to accomplish its purpose did not prevent a meeting of the minds); *Stites v. Yelverton*, 1955-NMSC-098, ¶ 31, 60 N.M. 190, 289 P.2d 628 (holding that the essential and material terms of an agreement had been agreed upon despite the lack of agreement on peripheral or "minimal" provisions matters).

8

{12}    The language proposed by the mediator provided the remedy for any breach of the "substantial and material" confidentiality term of the settlement agreement. *See Bogle*, 1963-NMSC-076, ¶ 11; *KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 20, 350 P.3d 1228 (describing material breach as "the failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract" (internal quotation marks and citation omitted)). The question of what should happen in the event a party breached the confidentiality provision was a secondary matter that did not affect the formation of the settlement agreement. We therefore conclude that the parties entered into a binding and enforceable contract and, accordingly, affirm the district court's order enforcing the settlement agreement.

**Attorney Fees**

{13}    Plaintiff contends that the district court awarded Defendant attorney fees as a sanction, pursuant to Rule 1-011. Plaintiff also argues that Defendant inadequately pled Rule 1-011 sanctions and therefore provided insufficient notice of her request for sanctions; the district court's findings to support the award were inadequate; and there is nothing in the record to support the award. Defendant contends that the basis of the district court's award was Plaintiff's conduct requiring Defendant to file a motion to enforce the settlement memorandum because of vexatious or unnecessary litigation.

9

{14} An award of attorney fees is reviewed for an abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450; *Gavin Maloof & Co. v. Sw. Distrib. Co.*, 1987-NMSC-103, ¶ 9, 106 N.M. 413, 744 P.2d 541 (recognizing that "the amount of an award of attorney fees lies within the sound discretion of the [district] court" and that the court can determine a reasonable fee based on the court's knowledge of the case and the pleading in the file); *Hertz v. Hertz*, 1983-NMSC-004, ¶ 43, 99 N.M. 320, 657 P.2d 1169 ("It is well[]settled that an award of attorney[] fees on the basis of reasonable compensation is a finding not to be disturbed unless patently erroneous as reflecting an abuse of discretion." (emphasis, internal quotation marks, and citation omitted)). A discretionary decision based on a misapprehension of the law is an abuse of discretion that must be reviewed de novo. *N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7. Thus, the question of whether the correct law has been applied and the district court's application of that law to the facts are reviewed de novo. *Id.* ¶¶ 7-8. After we determine whether the correct law has been applied, we review a discretionary decision for an abuse of discretion and reverse "only if it [is] contrary to logic and reason." *Id.* ¶ 8 (internal quotation marks and citation omitted). "The test is not what we would have done had we heard the fee request, but whether the [district] court's decision was clearly against the logic and effect of

10

the facts and circumstances before the court." *In re Estate of Greig*, 1988-NMCA-037, ¶ 22, 107 N.M. 227, 755 P.2d 71.

{15} The rule in New Mexico is that attorney fees are proper "only when authorized by statute, court rule, or an agreement expressly providing for their recovery." *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 16, 134 N.M. 776, 82 P.3d 947. However, this standard remains subject to three exceptions that are narrow in scope: "(1) exceptions arising from a court's inherent power to sanction the bad faith conduct of litigant and attorneys, (2) exceptions arising from certain exercises of a court's equitable powers, and (3) exceptions arising simultaneously from judicial and legislative powers." *Clark v. Sims*, 2009-NMCA-118, ¶ 21, 147 N.M. 252, 219 P.3d 20 (internal quotation marks and citation omitted). Our courts "may award attorney fees to vindicate [their] judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 12, 134 N.M. 394, 77 P.3d 298 (internal quotation marks and citation omitted).

{16} Based on the district court's familiarity with the case, including but not limited to the parties' prolonged and ongoing dispute over the remedy and release language of the settlement agreement; the pleadings filed to enforce the settlement agreement; as well as defense counsel's itemization of work performed by each attorney, time spent on the work and the total dollar amount of the fees and costs

provided with the motion for attorney fees, the district court was warranted in determining that Defendant's counsel was entitled to reasonable attorney fees in the amount of $4,450. *See Gavin Maloof & Co.*, 1987-NMSC-103, ¶ 9. Therefore, we cannot say that the district court abused its discretion in awarding attorney fees.

{17}    In her motion to enforce settlement and her reply brief supporting that motion, and in addition to other relief, Defendant requested "attorney[] fees and costs and for such other and further relief as the [c]ourt may deem just and proper." Defendant subsequently filed a motion for attorney fees and costs itemizing the total dollar amount of the fees and costs incurred. It was not until her reply brief that Defendant argued that Plaintiff willfully failed to abide by the terms and conditions of the settlement memorandum and argued that the attorney fees were justified as a sanction, pursuant to Rule 1-011, for unnecessary litigation.

{18}    Plaintiff's contention that the district court awarded Defendant attorney fees as a sanction pursuant to Rule 1-011 falls short. The district court order does not identify Rule 1-011 as a basis for the attorney fees award.[2] Because Defendant does not otherwise point us to any place in the record that supports her argument that the district court relied, in any way, on Rule 1-011 in awarding attorney fees, we need not address her argument. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9,

---

[2] Notably, Plaintiff in his docketing statement conceded that "[i]t [was] unclear whether or not Rule [1-0]11 is actually at issue in the [district] court's order."

12

150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**Plaintiff's Motion for Summary Judgment Was Rendered Moot**

{19}    Plaintiff argues that the district court erred by denying his motion for summary judgment. The record does not reflect a denial of Plaintiff's motion for summary judgement; rather, the district court determined the motion to be premature and effectively held it in abeyance for further factual development. However, the district court's subsequent order enforcing the settlement memorandum and agreement rendered the pending motion for summary judgment moot. *See Srader v. Verant*, 1998-NMSC-025, ¶ 40, 125 N.M. 521, 964 P.2d 82 (reviewing court will not determine academic or moot questions).

**CONCLUSION**

{20}    We conclude that the parties reached a final and enforceable settlement agreement and, therefore, affirm the district court's order enforcing their settlement memorandum. We also conclude that the district court did not abuse its discretion by granting Defendant's motion for attorney fees. Accordingly, we affirm both district court orders.

{21}    **IT IS SO ORDERED.**

_____

13

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**JACQUELINE R. MEDINA, Judge**